Peter W. McGaw (Bar No. 104691)
John L. Kortum (Bar No. 148573)
ARCHER NORRIS
Attorneys At Law
2033 North Main St., Suite 800
P.O. Box 8035
Walnut Creek, CA 94596
Telephone: (925) 930-6600
Facsimile: (925) 930-6620

Attorneys for Defendant
EARL THOMPSON

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT DEPPER, an individual, STUART DEPPER, an individual,<br><br>Plaintiffs,<br><br>v.<br><br>GRACE JOHNSON, an individual; EARL THOMPSON, an individual,<br><br>Defendants.<br><br>AND RELATED COUNTER ACTION. | CASE NO. C 99-03599 MEJ<br><br>**JOINT CASE MANAGEMENT CONFERENCE STATEMENT**<br><br>Date: December 11, 2008<br>Time: 10:00 a.m.<br>Dept.: The Hon. Maria-Elena James<br><br>ORDER CONTINUING STATUS CONFERENCE |

## I.
## INTRODUCTION

Plaintiffs Robert Depper (deceased) and Stuart Depper (the "Plaintiffs") and Defendant Earl Thompson (deceased) or his estate ("Thompson") submit this joint statement to apprise the Court of the status of this matter. Defendant Grace Johnson obtained a summary judgment in her favor and so is not a signatory to this statement. As set forth below, the parties are continuing to work together to investigate the environmental conditions on the property. However, additional time is needed to complete these investigations and to obtain site closure. Accordingly, the parties jointly request that this case be set for a further status conference in December, 2009.

## II.
## SUMMARY OF FACTS

Plaintiffs Stuart Depper and Robert Depper formerly operated the Glovatorium and currently own the Glovatorium property. Robert Depper is deceased. The former owner and operator of the property, Gordon Johnson, is also deceased, and his wife Grace Johnson, has obtained a summary judgment ruing in her favor. The only two remaining parties are Plaintiff and Mr. Thompson, who owned a building on an adjacent parcel. Mr. Thompson died in July 2004. A petition for the probate of Mr. Thompson's estate was granted on April 25, 2006. Although Mr. Thompson never operated a dry cleaning establishment, there were dry cleaning activities in his building prior to his purchase. Plaintiffs contend that contamination emanating from underground storage tanks in front of Mr. Thompson's building, and possibly from under the building itself, has commingled with contamination emanating from the "Glovatorium" site. Mr. Thompson has denied he is responsible for the underground storage tanks, which are not located on his property, and also has denied there is any evidence of contamination emanating from under his building. He contended that his property has been damaged by contamination emanating from the Depper property.

Over the past eight or so years, Plaintiffs have conducted various site investigations, under the supervision of the local regulatory agencies, which primarily focused on the Glovatorium property. For most of this time, Mr. Thompson did not have sufficient financial resources to participate in any site investigations, either with respect to his own property or with respect to the allegedly commingled down gradient plume. However, several years ago, Mr. Thompson obtained a defense from one of his insurance carriers and, as a result, has participated in the further investigations that are needed to resolve this matter. Until the beginning of this year, the parties believe that these investigations were near completion and that they would shortly be in a position to request that the local regulatory agency close the site. If the agencies agreed to close the site, the parties would be in a position to resolve this matter.

Unfortunately, this past Spring, levels of contamination, which had been decreasing, started to increase. Of particular concern was the presence of free product because the agency

JOINT CASE MANAGEMENT CONFERENCE
STMT. (No. C-99-3599 MEJ)
2

will not close the site based on risk as long as free product is present. As a result the parties performed additional investigation and testing to determine the cause of the increased levels and to see if there are feasible means to address the problem. This investigation was successful and indicates that multi-phase extraction ("MPE") may be a feasible means to address the free-product problem at the site. The parties plan to seek insurance carrier approval for continuing operation of the MPE system. If approval is obtained, the parties hope to operate the system for some period of time.

### III.
### STATUS OF ACTION

In 2002, after a series of expert depositions, the Plaintiffs and Defendant Thompson engaged in mediation with Lester Levy, Esq. of JAMS. That mediation session resulted in substantial progress towards settlement. The mediation concluded with the parties agreeing to retain a joint consultant to conduct further investigation and to attempt to better quantify damages that arise from the environmental contamination. The parties agreed to conduct this further investigation within the context of the on-going mediation. In addition, the parties agreed to a settlement structure if, after completion of that additional work, the regulatory agencies agree with the scope of remediation currently contemplated by the parties. The parties have agreed to work together to seek such approval from the regulatory agencies.

The work contemplated by the mediated agreement has been proceeding. The environmental consultant SOMA has characterized the contamination and removed a significant amount of free product from the site. Unfortunately, SOMA's most recent report concluded that free product levels, which had previously declined significantly, were increasing, as were the levels of some groundwater contamination. As noted in the last status report, these issues must be addressed before the parties can seek site closure. As noted above, an assessment of this problem indicates that MPE may be effective in addressing the problem. The parties continue to believe that if the immediate problem can be addressed, the site still should be a candidate for a low risk closure.

In addition, SOMA received approval from the City of Oakland of the Tank Closure Plan,

JOINT CASE MANAGEMENT CONFERENCE
STMT. (No. C-99-3599 MEJ)

3

and the tanks were recently closed in place. Sampling was also conducted in the vicinity of the tanks.

It will, however, take additional time to complete implementation of the MPE system and to obtain closure. The parties have agreed to continue the mediation while the additional site investigation is proceeding and continue to work cooperatively towards a final resolution of this matter.

## IV.
## CONCLUSION

The parties believe that they are making substantial progress towards resolution of this matter. The parties request that this effort be facilitated by further continuance of any litigation dates. Therefore, the parties request that the Court set a further status conference for December, 2009.

Dated: December 4, 2008　　　　Loeb & Loeb LLP

*Albert M. Cohen by JLK*

---
Albert M. Cohen
Attorneys for Plaintiffs Robert Depper and
Stuart Depper

Dated: December 4, 2008　　　　ARCHER NORRIS

---
John L. Kortum
Attorneys for Defendant EARL THOMPSON

Good cause appearing, the December 11, 2008 Status Conference is hereby CONTINUED to December 10, 2009 at 10:00 a.m. in Courtroom B. The parties shall file a joint status statement by December 3, 2009.

Dated: December 4, 2008



IT IS SO ORDERED
Judge Maria-Elena James

T0095001/731679-1

JOINT CASE MANAGEMENT CONFERENCE
STMT. (No. C-99-3599 MEJ)